UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JO ANN CALDWELL,

    Petitioner,                                                         Case No. 2:10-CV-11930

v.

                                                                   HON. AVERN COHN

MILLICENT WARREN,

    Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A ANCERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Jo Ann Caldwell, (Petitioner) is a state inmate at the Huron Valley Correctional Facility in Ypsilanti, Michigan, where she is serving a sentence of life imprisonment without parole for first-degree premeditated murder, M.C.L. § 750.316; and a sentence of life imprisonment without parole for conspiracy to commit first-degree premeditated murder, M.C.L. § 750.157a. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that she is incarcerated in violation of her constitutional rights; specifically, she claims her right to counsel was violated by police questioning. Respondent, through the Attorney General's Office, filed a response, arguing that the claim lacks merit. For the reasons which follow, the petition will be denied and the Court will decline to issue a certificate of appealability.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Washtenaw County Circuit Court.

Petitioner filed an appeal of right with the Michigan Court of Appeals, in which she raised the same claim presented in this petition. The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Caldwell,* No. 281875 (Mich.Ct.App. April 29, 2009). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court who denied petitioner leave to appeal. *People v. Caldwell,* 485 Mich. 895 (2009).

Petitioner has now filed a petition for writ of habeas corpus, on the following ground:

> I. The trial court erred by denying the petitioner's motion to suppress her statements to police made after she advised them they she only wished to speak with them in the presence of counsel.

## III. Facts

Petitioner was convicted of assisting her boyfriend Mark Porter in the shooting death of David Gibson in Ypsilanti Township, Michigan on October 28, 2006 at about 1:00-1:15 a.m. Evidence was presented at trial that petitioner had sold marijuana for the victim. Evidence from petitioner's cell phone showed her within three miles of the interchange of I-94 and Michigan Avenue in Ypsilanti Township, Michigan at 12:38 a.m. on the morning of October 28, 2006. The cell phone records also showed that petitioner had made phone calls to three different phone numbers in the victim's name between 11:18 and 11:21 p.m. on October 27, 2006. A video recording from a Mobile gas station at Rawsonville Road and I-94 in Ypsilanti Township, Michigan showed petitioner's Chevy Suburban arriving at the gas station at about 12:43 a.m. that same evening. The

video showed that petitioner and Porter were together. Petitioner and Porter went on a $ 440.00 shopping spree at Meijer's after the murder, where a cashier described the two as being in a good mood and hugging and kissing each other. The primary evidence against petitioner, however, were her post-arrest statements to the police, in which she admitted her involvement in the victim's murder. [1]

Prior to trial, petitioner moved for the suppression of her post-arrest statements, on the ground that she had invoked her right to counsel. The trial court denied the motion to suppress. The material facts that are relevant to petitioner's claim are recited verbatim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On November 2, 2006, officers executed a search warrant on defendant's residence. They left the residence after the search warrant was executed and, as they were going down the street, spotted defendant's maroon Suburban. The police pulled defendant over and asked her if she was willing to go to the Battle Creek Police Department for an interview. According to police, she said she was willing to go and agreed to ride with one of the officers to the department. They transported her to the station in one of their marked vehicles and told her that she was not under arrest. She was not handcuffed. She also gave the officers consent to drive her vehicle to the station so she could drive home after the interview.
>
> Once defendant arrived at the police department, she was taken to an interview room and interviewed by Detective Everette Robbins, from the Washtenaw County Sheriff's Department, at about 11:30 a.m. She was not in handcuffs or restrained in any way. Detective Robbins testified that he told defendant that she was not in custody and that she was free to leave at any time. Although defendant testified that Detective Robbins never told her that she was free to go, she said that she knew she could leave, but she wanted

---

[1] Some of petitioner's statements to the police were not testified to by the detectives at trial, but were included in the transcripts of the various interrogations, which were admitted into evidence at trial. (Tr. 7/25/2007, p. 134).

to know what was going on. Defendant did not want the interview taped because she did not trust the Battle Creek Police Department and she feared for her family. Detective Robbins agreed to her request.

According to police, about an hour into the interview, defendant said she would tell Detective Robbins what he wanted to know on three conditions, one of which was that her attorney would be present when she gave her statement. Defendant gave Detective Robbins the telephone number for her attorney. Detective Robbins relayed this message to Detective Raisanen who, in turn, called the attorney's office, but the secretary told him that the attorney was unavailable. Detective Raisanen left his cellular telephone number and told the secretary that the department was currently interviewing his client. According to police, defendant was informed that they were trying to contact her attorney. During this time, defendant was not interviewed, she was given three smoking breaks and refreshments, and she was offered food. The smoking breaks took place outside in front of the police department in a public setting.

About an hour and fifteen minutes later, the attorney called and said that he did not want the police speaking with his client. Detective Robbins told the attorney that they were at the Battle Creek Police Department and asked if he would like to speak to his client. The attorney informed Detective Robbins that he was unable to come to the police department at that time, but he was willing to speak to defendant on a secured line within the police department, or she could come see him in his office. According to Detective Robbins, he told defendant that her attorney did not want her speaking to them; that her attorney was not able to come to the department at that time; and if she wanted, she could speak to him either on a secured line within the police department or use the detective's cellular telephone. Defendant refused to talk to her attorney on any telephone within the department because she did not trust the department. Defendant then told Detective Robbins that if her attorney "didn't care enough to come down there when she asked him to," she did not need him.

Detective Robbins again informed defendant that she was not in custody and that she was free to leave. Defendant then said that she wanted the police to take her to jail because, if they did not keep her at least overnight, she and her children would be killed. She explained that she had to make some unidentified person or persons believe that she had been taken to jail based on the drugs they found at her house from the search warrant rather than that she was cooperating with the police. Once again, Detective Robbins reiterated that defendant was not in custody and was free to leave. Defendant said she could not leave yet. She asked what would happen to her if she were a witness to the victim's murder. Detective Robbins talked to her and gave her a cigarette and a restroom break. Defendant and Detective

4

> Robbins conversed for about two or three hours about "really nothing ... you know her life on the farm and growing up and her relationship with [the victim]."
>
> Sometime between 4:30 p.m. and 5:00 p.m., the decision was made to arrest defendant based, in part, on cellular telephone records that were obtained by Detective Neumann, which placed defendant in the Ypsilanti area, contrary to statements she had made to Detective Raisanen. Detective Robbins advised defendant she was under arrest and "immediately" read defendant her *Miranda* warnings. Defendant apparently made incriminating statements on both November 2, 2006 and again the next day after her formal arrest.

*People v. Caldwell,* Slip. Op. at * 1-3 (internal footnote omitted).

## IV. Analysis

### A. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362,

5

405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- S.Ct. ----, No. 2011 WL 148587, * 11 (U.S. January 19, 2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* Slip.

6

Op. at * 12. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

### B. <u>Admissibility of petitioner's statements</u>

Petitioner argues that the the trial court erred by denying her motion to suppress post-arrest statements that she made to the police after she had requested the presence of her attorney during conversations that she had with the police prior to her arrest.

Petitioner initially says that her Sixth Amendment right to counsel was violated when the police spoke with her after she had informed them prior to her arrest that she wanted her attorney present during any discussions with the police.

In rejecting this claim, the Michigan Court of Appeals noted that the initial warrant in the case was dated November 4, 2006, the preliminary examination did not begin until December 20, 2006, and the criminal information was not filed until January

30, 2007. Because petitioner made her incriminating statements to the police before her Sixth Amendment right to counsel attached, that right did not bar admission of the statements in this case. *Caldwell,* Slip. Op. at * 3.

The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb,* 532 U.S. 162, 167-68 (2001)(quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)(internal citations and quotation marks omitted); *See also Davis v. U.S.,* 512 U.S. 452, 456-57 (1994). Petitioner made her statements to the police on November 2 and 3, 2006. Petitioner was not formally charged with the crime until November 4, 2006. Because petitioner made these statements to the police before adversary criminal proceedings had been initiated against her, the Sixth Amendment right to counsel does not bar their admission. *McNeil,* 501 U.S. at 175; *U.S. v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). The state court was correct in concluding the same.

Petitioner further argues that the police violated her Fifth Amendment right against self-incrimination when they interrogated her, even though she had previously invoked her right to counsel.

In rejecting petitioner's claim, the Michigan Court of Appeals ruled that petitioner's *Miranda* rights had not been triggered when she requested the presence of counsel, because petitioner was not in custody when she made these requests. *Caldwell,* Slip. Op. at * 4:

The record shows that on October 30, 2006, defendant willingly went to the

police department to take a polygraph examination, free of any restraints. The polygraph examiner explained her rights to her at which point defendant exercised her rights by freely leaving the police department. On November 2, 2006, defendant agreed to go with an officer to the police department to make a statement, was told that she was not under arrest, and was not restrained in any way. Defendant gave officers consent to drive her vehicle to the department so she could drive home after the interview. At the department, she was told that she was not in custody and that she was free to leave. She said she knew she could leave, but she wanted to know what was going on. After defendant asked for her attorney, the detectives attempted to contact him and, while waiting to hear back from him, defendant went outside unescorted and unrestrained three times. She was ultimately given the opportunity to talk to her attorney, but she chose not to and decided to talk to the detectives alone. She was again informed that she was not in custody and was free to leave, but she insisted on being kept overnight. She subsequently spoke with the detectives about her life and about the victim. Based on this record, the trial court's finding that defendant was not in custody was not clearly erroneous. Accordingly, defendant's Fifth Amendment rights were not implicated at the time that she requested the presence of counsel.

Moreover, once defendant was taken into custody upon her formal arrest that night, she was given her *Miranda* rights. However, she did not request counsel be appointed and waived her Fifth Amendment rights. Defendant has not challenged that waiver on appeal and has not argued that she invoked her right to counsel subsequent to that waiver. Accordingly, we find no error in the trial court's decision to deny the suppression motion.

*Id.* at * 4.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

    1. the person must be warned that he has a right to remain silent;
    2. that any statement he does make may be used against him;
    3. and that he has a right to the presence of an attorney, either appointed

9

or retained.

*Miranda,* 384 U.S. at 444.

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question nor are they required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003). Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The initial determination of whether a suspect is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. *See Stansbury v. California,* 511 U.S. 318, 323 (1994). Stated differently, a policeman's unarticulated plan has no bearing upon whether a suspect is "in custody," so as to require *Miranda* warnings. Instead, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *See Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

The Michigan Court of Appeals' determination that petitioner was not in custody

when she invoked her right to counsel was a reasonable determination of the facts and law in this case. As noted in detail above, on November 2, 2006, petitioner agreed to go with the police to the Battle Creek Police Department, was told by the police that she was not under arrest, nor was she placed in handcuffs or restrained in any way. The police even transported petitioner's truck to the police department so that she would be able to drive home after the interview. At the police station, petitioner was again told by Detective Robbins that she was not in custody and that she was free to leave at any time. Petitioner knew that she could leave the police station but "wanted to know what was going on." Once petitioner asked for her attorney, the detectives attempted to contact him. While waiting to hear back from her attorney, petitioner went outside the police station unescorted and unrestrained three separate times. On each of these occasions, petitioner had the ability to simply walk away from the police station, but chose not to. When petitioner's counsel informed the police that he could not come to the police station and did not want to speak with her on a police telephone line, petitioner told Detective Robbins that if her lawyer "didn't care enough to come down there when she asked him to", then she did not need him. Detective Robbins again advised petitioner that she was not in custody and was free to leave, but she insisted on being kept overnight. After a cigarette and bathroom break, in which petitioner was still not in custody, she spoke with the detectives about her life and about the victim. It was only subsequent to these discussions that a decision was made to place petitioner under arrest.

Under the circumstances, the Michigan Court of Appeals reasonably determined that petitioner was not in custody when she invoked her right to counsel. Petitioner

voluntarily accompanied the police to the police station and was told that she was not under arrest. See *Oregon v. Mathiason,* 429 U.S. at 495. Petitioner was allowed to walk outside the police station three times to smoke a cigarette without any guard or escort. Petitioner's truck had been driven to the police station by the police, for the purpose of providing petitioner a means to leave the police station on her own. Had petitioner wanted to leave the police station at any time, she could have. Because "[t]here is no indication that the questioning took place in a context where [petitioner's] freedom to depart was restricted in any way", the Michigan Court of Appeals reasonably determined that petitioner's requests for counsel had taken place in a noncustodial situation. *Id.*

The Michigan Court of Appeals also reasonably determined that petitioner's requests for counsel, made at a time when she was not subjected to a custodial interrogation, did not trigger her Fifth Amendment privileges.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988)(quoting *Miranda,* 384 U.S. at 474). The rationale behind *Edwards* is that once the accused informs law enforcement officials "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently

compelling pressures' and not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010)(quoting *Roberson*, 486 U.S. at 681).

A number of courts have held that the rule established in *Edwards* is applicable only if a person is subjected to an interrogation while in police custody. *See Burket v. Angelone*, 208 F. 3d 172, 197 (4th Cir. 2000)(petitioner "could not invoke the protections provided by *Miranda*," including the right to counsel, "because he was not 'in custody' at the time he stated 'I think I need a lawyer'"); *United States v. Wyatt*, 179 F. 3d 532, 538 (7th Cir.1999)("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation."); *United States v. Bautista*, 145 F. 3d 1140, 1147 (10th Cir. 1998)(("[I]n order to implicate the *Miranda-Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required."); *Alston v. Redman,* 34 F. 3d 1237, 1244 (3rd Cir. 1994)( "*Miranda* is not implicated" absent "both a custodial setting and official interrogation"); *Tukes v. Dugger*, 911 F. 2d 508, 515 (11th Cir. 1990)("Where the prisoner is not in custody, the *Edward*s and *Roberson* concerns are not triggered because the non-custodial defendant is free to refuse to answer police questions, free to leave the police station and go home, and free to seek out and consult a lawyer"); *U.S. v. Assi,* 512 F.Supp. 2d 1047, 1055 (E.D. Mich. 2007)(where suspect ultimately charged with providing material support to designated foreign terrorist organization was admittedly not under arrest during questioning by federal agents, and agents had informed suspect that he was free to conclude questioning at any time, interview was non-custodial, and suspect had no right to counsel during it)*;* *United States v. Ridley,* 199 F. Supp. 2d 704, 713 (S.D. Ohio 2001)(defendant's

alleged question to FBI agent before being questioned at the FBI offices, in which he asked agent whether he needed a lawyer, was insufficient to invoke defendant's right to counsel under *Miranda*; defendant was not in custody); *Trapani v. Stovall,* No. 2006 WL 123784, * 9 (E.D. Mich. January 17, 2006)("Because petitioner was not subjected to custodial interrogation in this case, the dictates of *Edwards* do not apply"); *See also United States v. Martin,* 95 Fed. Appx. 169, 178, n. 8 (6th Cir. 2004)("Martin's claim may also fail for the additional independent reason that since Martin was not in custody for purposes of *Miranda* when he made his initial phone call to his attorney, *Edwards* does not apply.").

The holdings in these cases appear to be consistent with Supreme Court jurisprudence. In *Montejo v. Louisiana*, 129 S. Ct. 2079 (2009), the Supreme Court overruled their previous decision in *Michigan v. Jackson*, 475 U.S. 625 (1986), which had forbid the police from initiating an interrogation of a criminal defendant once he has invoked his Sixth Amendment right to counsel at an arraignment or similar proceeding. In *Montejo,* the Supreme Court noted that:

> "[t]he *Miranda- Edwards* regime is narrower than *Jackson* in one respect: The former applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups). However, those uncovered situations are the least likely to pose a risk of coerced waivers. When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering."

*Id.* at 2090.

The Supreme Court further observed that they had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial

interrogation'....". *Montejo,* 129 S. Ct. at 2091 (quoting *McNeil,* 501 U.S. at 182, n. 3). Language in other Supreme Court cases also suggests that the rule in *Edwards* applies only in the context of custodial interrogation. *See McNeil,* 501 U.S. at 178 (The purpose of the *Miranda-Edwards* guarantee is narrower than the one protected by the Sixth Amendment right to counsel because it relates only to custodial interrogation); *Minnick v. Mississippi,* 498 U.S. 146, 154 (1990)("*Edwards'* purpose [is] to protect the suspect's right to have counsel present at custodial interrogation").

In light of the rationale behind *Edwards,* the fact that the Supreme Court has suggested that *Edwards* does not apply to non-custodial interrogations, and the fact that numerous courts, including the Sixth Circuit and two judges within this district, have concluded that *Edwards* applies only if a person is subjected to a custodial interrogation, petitioner is unable to show that the Michigan Court of Appeals' rejection of her *Edwards* claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, No. 2011 WL 148587, * 12. Indeed, the extension of *Miranda* and *Edwards* "outside of the context of custodial interrogation, would diminish the 'bright-line' nature of the Supreme Court's *Miranda* jurisprudence, often cited by the Court as one of the qualities of that body of law." *Alston,* 34 F. 3d at 1249, n. 11.

Finally, even if the Supreme Court's holding in *Edwards* extended to non-custodial situations, petitioner would still not be entitled to habeas relief on her claim, because petitioner agreed to continue speaking with the police after being informed that her attorney could not come down to the police station.

In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. *Id.* at 1041-42. The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id.* at 1045-46. By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id.* at 1055. The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F. 3d 297, 305 (6th Cir. 2008)(*quoting United States v. Whaley*, 13 F. 3d 963, 967 (6th Cir. 1994)).

When petitioner was informed by the police that her attorney was unable to come to the police station, petitioner replied that if her lawyer "didn't care enough to come down here when she asked him to," she did not need him. Petitioner remained at the police station, even though she was again told she was free to leave, and continued to speak with the police both before and after she was arrested. Prior to her arrest, petitioner even asked Detective Robbins what would happen to her if she had witnessed the victim's murder. Petitioner was not pressured to talk by police interrogation, but rather "evinced a willingness and a desire to talk generally about [her] case" even though she had previously invoked her right to counsel. *See U.S. v. Ware,*

16

338 F.3d 476, 481 (6th Cir. 2003)(arrestee initiated interrogation after invoking his *Miranda* right to counsel, where arrestee, after being informed that officer was unable to contact the attorney the arrestee wished to speak to, stated "I'll just talk, that's all, you know, just forget it."). The admission of petitioner's subsequent incriminating statement did not violate her Fifth Amendment rights.

### V. Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claim did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claim, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [2] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if petitioner chooses to appeal the Court's decision, she may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: February 3, 2011         s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

17

**10-11930 Caldwell v. Warren**
**Memorandum & Order**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to Jo Caldwell, 189012, Huron Valley Complex - Women's, 3201 Bemis Road, Ypsilanti, MI 48197 and the attorneys of record on this date, February 3, 2011, by electronic and/or ordinary mail.

      s/Julie Owens
Case Manager, (313) 234-5160